

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described.**

**United States Bankruptcy Judge**

**Signed November 12, 2010**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | CASE NO. 05-39136-SGJ |
| | § | |
| CARL YECKEL, | § | |
| | § | |
| DEBTOR | § | CHAPTER 7 |

**FINDINGS OF FACT, CONCLUSIONS OF LAW AND
ORDER DENYING MOTIONS TO STRIKE**

On September 16, 2010, and October 14, 2010, came on to be heard two motions to strike that were filed as Docket Numbers 245 and 248 in the Carl Yeckel bankruptcy case. As announced on the record on October 15, 2010, and as explained more fully below, the Court **DENIES** both the "Debtor's Motion to Strike the Amended Objection to Exemptions as Untimely" [Doc. No. 245] ("Debtor's Motion") and the "Motion of the King Foundation and Bankruptcy Trustee to Strike Debtor's Response to Motion for Partial Summary Judgment and Supporting Affidavit" [Doc. No. 248] ("King Foundation's and Trustee's Motion").

The first Motion to Strike is Debtor's Motion, in which Debtor Carl Yeckel ("Debtor") seeks to have the Court strike the Amended Objections to Exemptions [Doc. Nos. 132 and 133]

1

filed on June 3, 2006, by creditor The Carl B. and Florence E. King Foundation ("the King Foundation"), and joined in by Jim Cunningham, in his capacity as the Chapter 7 Trustee ("Trustee") and the Texas Attorney General ("TXAG") ("Amended Objections") (hereinafter, the TXAG, the King Foundation and the Trustee are collectively referred to as the "Objectors"). In Debtor's Motion, Debtor argues that the Amended Objections must be denied because Objectors assert, for the first time: (1) objections to Debtor's homestead exemption under Section 522(q) of the United States Bankruptcy Code ("BK Code"); (2) arguments that the values Debtor used on certain personal property were too low; and (3) arguments that certain personal property of Debtor was purchased with funds improperly acquired from the King Foundation. Debtor argues that the Amended Objections are time barred under the applicable Federal Rules of Bankruptcy Procedure ("National BR") and Bankruptcy Local Rules for the Northern District of Texas.

The second Motion to Strike at issue is King Foundation's and Trustee's Motion, in which the King Foundation and Trustee seek to have the Court strike the Debtor's Response to Motion for Summary Judgment ("Debtor's Response") and Affidavit in Support of Response to Motion for Summary Judgment ("Affidavit") [Doc. Nos. 244 and 246] filed in response to the King Foundation's and Trustee's Motion for Partial Summary Judgment [Doc. No. 241] ("King Foundation's and Trustee's MSJ"), which MSJ asks for summary judgment on the Section 522(q) issues raised in the Amended Objections. The King Foundation and Trustee argue in their Motion that Debtor's Response and Affidavit should be stricken as untimely, because they were filed approximately 71 days after the King Foundation's and Trustee's MSJ, and,

additionally that Debtor's Affidavit should be stricken because it was based upon conclusory and unsupported allegations.

The following are the Court's Findings of Fact and Conclusions of Law. The Court reserves the right to supplement and amend these Findings of Fact and Conclusions of Law. To the extent any Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

1. Debtor filed a voluntary petition under Chapter 11 of the BK Code on August 12, 2005.

2. During the pendency of the Chapter 11, Debtor's first meeting of creditors pursuant to Section 341 of the BK Code was held and concluded on September 15, 2005.

3. On October 16, 2005, the King Foundation filed its original objection to Debtor's exemptions [Doc. No. 33] ("Original Exemption Objection"). There is no question that this was a timely objection to exemptions. The Original Exemption Objection was filed thirty days after the conclusion of the Section 341 first meeting of creditors that was held in the Chapter 11 phase of Debtor's case.

4. On November 3, 2005, Debtor's bankruptcy case ("Bankruptcy") was converted to one under Chapter 7 of the BK Code. Thus, a Chapter 7 Trustee, Jim Cunningham, was thereafter appointed and a new Section 341 first meeting of creditors was held on December 16, 2005 and was concluded on June 1, 2006.

5. Thereafter, Objectors filed their Amended Objections on June 30, 2006, which for the first time added the Chapter 7 Trustee and the TXAG as joining objectors, and arguably for

the first time articulated new grounds or theories for objecting to Debtor's allegedly exempt property. Specifically, allegedly for the first time, it was argued that Debtor's exemption claimed on his alleged homestead at 3900 Marquette in Dallas, Texas, should be capped at $125,000 pursuant to Section 522(q) of the BK Code, because Debtor owed a debt arising from fraud, deceit or manipulation in a fiduciary capacity. The Original Exemption Objection objected to Debtor's homestead exemption as to the property at 3900 Marquette, but it did not specifically reference Section 522(q) or any other subsections of Section 522 of the BK Code.

6. The Original Exemption Objection argued (i) that the transaction in which Debtor purchased 3900 Marquette was not arms-length and was consummated to defraud his creditors; (ii) that no valuable consideration was exchanged for the property; and (iii) that the King Foundation believed that its assets were wrongfully and fraudulently used to consummate the sale transaction. The Original Exemption Objection is short (barely more than two pages), *but it does happen to reference twice* the fact that there is a "State Court Judgment and Findings of Fact and Conclusions of Law whereby Debtor was found by a Jury to have defrauded the King Foundation." And the Original Exemption Objection uses the words "defraud," "defrauded," "fraudulently," and "fraud" several times in connection with discussions of 3900 Marquette, and also in connection with Debtor's transactions with the King Foundation.

7. Debtor's Motion to Strike argues that the Amended Objections filed on June 30, 2006 should be found to be untimely because they allegedly raised new grounds or theories for objecting to the homestead – in particular, Debtor alleges that the citation to Section 522(q) and the claim that Debtor owes a debt for fraud, deceit or manipulation in a fiduciary capacity and,

thus, any homestead exemption must be capped at $125,000 are new grounds or theories and should be stricken as untimely.

8. National BR 4003(b), as it existed when Debtor filed Bankruptcy in August 2005, required that an objection to exemptions be filed within 30 days of the conclusion of the Section 341 first meeting of creditors. Thereafter, the Committee on Rules of Practice and Procedure of the Judicial Conference of the United States (the "Rules Committee") approved Interim National Bankruptcy Rules ("Interim Rules") to implement the Bankrupt Abuse Prevention and Consumer Protection Act of 2005 ("Reform Act"), and the Rules Committee "recommended and urged" in a letter dated August 22, 2005 (the "Rules Committee letter") to all United States Bankruptcy Courts (among others) the adoption of these Interim Rules by local bankruptcy courts until final or permanent new national Bankruptcy Rules could be promulgated after an opportunity for public comment.

9. These Interim Rules included an amended National BR 4003(b)(2), which specifically provided that a Section 522(q) objection to a homestead exemption should be permitted to be filed up through the closing of a bankruptcy case. These Interim Rules were adopted in the Northern District Texas bankruptcy court on October 17, 2005, by General Order No. 2005-04 signed by Chief Bankruptcy Judge Barbara Houser on October 13, 2005. General Order No. 2005-04 specifically stated that these Interim Rules were adopted in their entirety "to be effective October 17, 2005 and to apply to cases and proceedings governed by the Reform Act." This was consistent with the recommendation of the August 22, 2005 Rules Committee letter.

10. When the permanent, amended National BRs became effective on December 1, 2008 (which permanent rules contained the amended National BR 4003(b)(3), that was identical to the Interim Rule 4003(b)(2), and, likewise, provided that a Section 522(q) objection to a homestead exemption should be permitted to be filed up through the closing of a bankruptcy case), the Order of April 23, 2008 of the United States Supreme Court adopting these permanent rules specified that the new permanent National BRs would apply in cases commenced on and after December 1, 2008 and "insofar as just and practicable, in all proceedings then pending" – and, of course, Debtor's Bankruptcy and this contested matter before the Court was "then pending" on December 1, 2008.

11. Debtor argues that the National BRs applicable at the time he filed his case govern the time by which an objection to exemptions in his case had to be filed. Thus, Debtor argues that an objection to a homestead exemption under Section 522(q), and any other exemption objection, was required to be filed by October 16, 2005 (*i.e.,* the 30th day after the conclusion of the Section 341 first meeting of creditors held during the Chapter 11 phase of his case). The Debtor further argues that the Amended Objections filed by the Objectors on June 30, 2006 ought not to be allowed to relate back to the Original Exemption Objection because they argue wholly new grounds or theories for objecting to the homestead and some other exemptions.

### Conclusions of Law

1. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1334 and this is a core proceeding pursuant to 28 U.S.C. § 157(b).

**Debtor's Motion**

2. The governing authorities in this contested matter are primarily Section 522 of the BK Code, National BR 4003 in its present and in previous forms, and National BR 1019(2).

3. Pursuant to National BR 4003(b), as the rule existed on August 12, 2005 (*i.e.,* the Petition Date), objections to exemptions were due within the later of 30 days after the Section 341 meeting of creditors was concluded, or within 30 days of any amendment to the list of exemptions or supplemental schedules.

4. Section 522(q) of the BK Code was newly added in the Reform Act. While most of the provisions of the Reform Act went into effect only in cases filed on or after October 17, 2005, Section 522(q) and other provisions of Section 522 dealing with limiting the homestead exemption went into effect as to cases filed on or after April 20, 2005. Thus, Section 522(q) and the other new provisions of Section 522 as to homesteads applied in Debtor's Bankruptcy case, because the case was filed on August 12, 2005.

5. The new National BR 4003(b)(3), stating that a Section 522(q) objection can be filed up until the end of the case, applies here and essentially gave parties-in-interest a new time period (through the end of the case) to file a Section 522(q) objection, because of the literal wording of General Order 2005-04 issued in the Northern District of Texas, which stated that the Interim Rules – wherein this new BR 4003(b)(3) was contained – were "to be effective October 17, 2005 *and to apply to cases and proceedings governed by the Reform Act*."

6. There is no doubt that this Bankruptcy is governed by the Reform Act with respect to Section 522(q). Thus, the new national Interim Bankruptcy Rule 4003(b)(3) became effective on October 17, 2005 and applied with regard to any pending case that was governed by

the Reform Act in any respect. It essentially meant that parties-in-interest in Debtor's Bankruptcy had until the end of the case to bring a Section 522(q) exemption objection.

7. The Court's conclusion that Objectors' Amended Objections are timely is consistent with the Order of April 23, 2008 of the United States Supreme Court which stated that the new rules would apply "insofar as just and practicable, in all proceedings then pending." This conclusion is also consistent with the intent of Congress expressed in Sections 727(a)(12) and 1328(h) of the Bankruptcy Code, both of which indicate that courts should consider Section 522(q) issues up until the end of a bankruptcy case.

8. General Order 2005-04 issued in the Northern District of Texas could have stated that it was "to be effective October 17, 2005 *and to apply to cases and proceedings filed on or after October 17, 2005*." But instead, it was phrased differently – stating that the new Interim Rules were "to be effective October 17, 2005 *and to apply to cases and proceedings governed by the Reform Act*." This broader more specific wording should be given its plain meaning and it should be assumed the specific words were chosen for a reason. The reasonable interpretation is that the reason was that certain cases – *i.e.,* those filed between April 20, 2005 and October 17, 2005 – would be governed in some aspect by the Reform Act – even though the entire Reform Act did not become effective until October 17, 2005. Thus, the wording of General Order 2005-4 was broader in scope than merely providing that the national Interim Rules were effective as of October 17, 2005. And General Order 2005-4 was broader in scope than simply providing that it applied to cases filed on or after October 17, 2005. It was worded to apply to *all cases governed by the Reform Act*. Thus, General Order 2005-4 applied the new national Interim Rules to Debtor's Bankruptcy, since it, in some aspects *vis-a-vis* the homestead

exemption, is governed by the Reform Act. The Court therefore concludes that Objectors' Amended Objections were timely filed pursuant to General Order 2005-4.

9. The Debtor's Motion to Strike is also denied and overruled for additional reasons. This Court concludes that, even if the old National BK Rule 4003(b) were to be applicable in the case at bar, the Amended Objection to exemption filed on June 30, 2006 should be allowed by this Court, pursuant to National BR 7015, as an amended pleading and the amendments therein should be deemed to relate back to October 16, 2005 – the date that the Original Exemption Objection was filed. Pursuant to BR 9014, this Court can apply BR 7015 in a contested matter in its discretion at any stage in a proceeding. The Court hereby concludes that BR 7015 should be applied in this contested matter in the interests of justice. Bankruptcy Rule 7015 incorporates Federal Rule of Civil Procedure ("FRCP") 15 into bankruptcy matters, and FRCP 15 provides that parties may move to amend pleadings with leave of court, and leave should be freely given when justice requires. FRCP 15(c) also provides for amendments in amended pleadings to relate back to the date of the original pleading if the amendment asserts a claim that arose out of the conduct, transaction or occurrence set out ***or attempted to be set out in the original pleading***.

10. The Court concludes that the Original Exemption Objection involved the homestead, involved fraud accusations as to the Debtor, and mentioned the King Foundation's significant fraud judgment against the Debtor twice. The Court determines that the Amended Objection to Exemptions was merely an amplification of the Original Exemption Objection to exemptions, specifying that Section 522(q) is applicable to the homestead, but the same property was involved – *i.e.,* the Original Exemption Objection objected to the homestead – and

substantially the same conduct was at issue – *i.e.,* allegedly fraudulent conduct of the Debtor as to the King Foundation, which had resulted in a judgment or debt in favor of the King Foundation. This is not an entirely new objection to different exempt property, and the theory asserted is not entirely new in nature. It is an amendment that should be and is deemed to relate back.

11. The Court concludes that the argument of the King Foundation and the Chapter 7 Trustee that a new time period to object to exemptions starts to run upon the conversion of a case from chapter 11 to chapter 7 is without merit. This argument is inconsistent with National Bankruptcy Rule 1019(2) – as it exists now and before the Reform Act – but the Court notes that it has been proposed that National BR 1019(2) will soon be amended – effective December 1, 2010 – to provide for a new time period to object to exemptions upon conversion of a case from chapter 11 to chapter 7.

12. Finally, the Court concludes that there is one more reason to overrule Debtor's Motion: under the unique facts of this case, Debtor's Motion should be deemed equitably time-barred, because the timeliness issue as to the June 30, 2006 Amended Objection to Exemptions was not raised by Debtor until September 2010 – more than 4 years after the fact. The U.S. Supreme Court, in *Kontrick v. Ryan*, 540 US 443 (2004), discussed how National BR 4004, dealing with the deadline to object to a debtor's discharge, is procedural in nature and not jurisdictional in nature, and, thus, a debtor who did not raise a timeliness objection to an untimely objection to discharge was barred from raising it for the first time on appeal. In that opinion, the Court indicated that a party can forfeit an affirmative defense of timeliness if he does not himself timely raise the argument – because, again, it is not a jurisdictional argument.

Somewhat similar to the situation in *Kontrick*, this Court concludes that it is possible and, indeed, should be deemed to be the case here that Debtor forfeited his timeliness argument by waiting over four years to raise it. Laches, waiver, or some other sort of equitable estoppel doctrine should now be deemed to preclude it. The Court concludes that there was logic in the Chapter 7 Trustee and the King Foundation waiting for four years (*i.e.,* until June 2010) to file a motion for partial summary judgment as to their Amended Objections to Exemptions. The logic was that the fraud judgment of the King Foundation was on appeal and it made sense arguably to let the appeals run their course in the state court system to avoid retrying whether there was a "fraud debt" (for purposes of Section 522(q)) in the bankruptcy court). On the other hand, the Court concludes that there was not the same sort of logic and justification for Debtor to wait more than four years to argue the alleged procedural defect as to the alleged untimeliness of the Section 522(q) objection, and thus Debtor's Motion should be deemed equitably time-barred.

**King Foundation's and Trustee's Motion**

13. While the Debtor's Response and Affidavit, filed in response to the King Foundation's and Trustee's Motion for Partial Summary Judgment, were late under the correct interpretation of the summary judgment rules, the Court concludes that there was excusable neglect under National BR 9006, permitting the late response. The "excusable neglect" is that there was some arguable confusion in the governing local district court and bankruptcy rules in effect in June 2010. Thus, the Court concludes that Debtor's Response and Affidavit should not be stricken, and the Court should hold a hearing on the merits on the King Foundation's and Trustee's Motion for Partial Summary Judgment, and Debtor's Response and Affidavit filed in response thereto.

11

14. As for the argument that Debtor's Affidavit in support of his Response is conclusory in nature and should be stricken for that reason, the Court concludes that it should not be stricken, but rather, the Court will decide, in the context of all of the submissions, whether it raises a genuine issue as to any material fact.

Accordingly, based on the foregoing, it is **ORDERED** that the Debtor's Motion [Doc. No. 245] and the King Foundation's and Trustee's Motion [Doc. No. 248] are **DENIED**.

#### END OF ORDER ###